IN THE UNITED STATES DISTRICT COURT
THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MAJOR ENERGY ELECTRIC SERVICES, LLC, MAJOR ENERGY SERVICES, LLC, RESPOND POWER, LLC, NATIONAL GAS & ELECTRIC, LLC, and SPARK HOLDCO, LLC,<br><br>Plaintiff,<br><br>v.<br><br>SAUL HOROWITZ, individually and as Sellers' Representative, MARK WIEDERMAN, ASHER FRIED, MICHAEL BAUMAN, and MARK JOSEFOVIC,<br><br>Defendants. | CASE NO. 1:19-cv-10431 |

**PLAINTIFFS' ORIGINAL COMPLAINT**

Defendants Saul Horowitz, individually and as Sellers' Representative, Mark Wiederman, Asher Fried, Michael Bauman, and Mark Josefovic ("Defendants") owe Plaintiffs[1] indemnity for various matters including, but not limited to, (i) a lawsuit recently settled between the State of Illinois and Plaintiff Major Energy Electric Services, LLC ("MEES"), and approved by the presiding court ("Illinois Lawsuit"); and (ii) certain delinquent state tax obligations of MEES, Major Energy Services, LLC ("MES"), and Respond Power, LLC ("Respond Power"; collectively "Major Energy") that Defendants failed to timely pay and/or disclose to Plaintiffs. Demands for payment, with supporting documentation, have been tendered to Defendants. However, they have steadfastly refused to honor their indemnity obligations despite their express contractual

---

[1] The term "Plaintiffs" means Major Energy Electric Services, LLC, Major Energy Services, LLC, Respond Power, LLC, National Gas & Electric, LLC and Spark Holdco, LLC.

obligations to do so under the operative Membership Interest Purchase Agreement ("MIPA").[2] As a result, this lawsuit has become necessary to secure indemnification payments and attorneys' fees and costs incurred by Plaintiffs, which continue to accrue in connection with the indemnifiable matters.

## I.     PARTIES

1.     Plaintiffs MEES, MES, and Respond Power (collectively "Major Energy") are limited liability companies whose sole member is Spark Holdco, LLC. Spark HoldCo, LLC is a limited liability company whose members are Spark Energy, Inc., Retailco, LLC, and NuDevco Retail, LLC ("NuDevco"). Spark Energy, Inc. is a Delaware corporation with its principal place of business in Texas. Retailco is a limited liability company whose sole member is TxEx Energy Investments, LLC ("TxEx"), whose sole member is W. Keith Maxwell III ("Maxwell"), a citizen of Texas. NuDevco is a limited liability company whose sole member is NuDevco Retail Holdings LLC, which is a limited liability company whose sole member is Electric HoldCo, LLC, which is a limited liability company whose sole member is TxEx.

2.     Plaintiff National Gas & Electric, LLC ("NGE") is a limited liability company whose sole member is Retailco, LLC. Retailco is a limited liability company whose sole member is TxEx, whose sole member is Maxwell, a citizen of Texas.

3.     Plaintiff Spark Holdco, LLC ("Spark Holdco") is a limited liability company whose members are Spark Energy, Inc.; Retailco, LLC; and NuDevco. Spark Energy, Inc. is a Delaware corporation with its principal place of business in Texas. Retailco is a limited liability company whose sole member is TxEx, whose sole member is Maxwell, a citizen of Texas. NuDevco is a limited liability company whose sole member is NuDevco Retail Holdings LLC, which is a limited

---

[2] The operative MIPA is the March 18, 2016 agreement that memorialized the sale of Major Energy to Plaintiff National Gas & Electric, LLC ("NGE").

liability company whose sole member is Electric HoldCo, LLC, which is a limited liability company whose sole member is TxEx.

4. Defendant Saul Horowitz is an individual whose last known address is 21 Rochelle Lane, Spring Valley, NY 10977.

5. Defendant Mark Wiederman is an individual whose last known address is 17 Willows Road, Monsey, NY 10952.

6. Defendant Asher Fried is an individual whose last known address is 1639 East 31st Street, Brooklyn, NY 11234.

7. Defendant Michael Bauman is an individual whose last known address is 5 Circle Place, Lakewood, NJ 08701.

8. Defendant Mark Josefovic is an individual whose last known address is 3112 Avenue L, Brooklyn, NY 11210.

## II.     JURISDICTION AND VENUE

9. This Court has subject matter jurisdiction over Defendants pursuant to 28 U.S.C. § 1332(a)(1) because there is complete diversity of citizenship between the parties, and the amount in controversy far exceeds $75,000. Plaintiffs are citizens of Texas and Delaware, and Defendants are citizens of New York and New Jersey.

10. This Court has personal jurisdiction over all Defendants under principles of specific and general jurisdiction, as each has sufficient contacts with New York. Indeed, Defendants Horowitz, Wiederman, Fried, and Josefovic live in New York, and all Defendants frequently engage in business and transactions in New York. Further, each of Defendants engaged in business and transactions in New York specific to the events at issue in this case, and all signed the MIPA requiring suit in, and submitting to the jurisdiction of, courts in New York, New York. Ex. A §

11.3. Additionally, Defendants have availed themselves of this Court's jurisdiction by filing and litigating parallel lawsuits in this Court. *See Saul Horowitz, as Sellers' Representative v. National Gas & Electric LLC, et. al,* Case 1:17-cv-07742-JPO; *Saul Horowitz v. Spark Energy, Inc., Spark HoldCo, LLC, Major Energy Services, LLC, Major Energy Electric Services, LLC, and Respond Power, LLC,* Case 1:19-cv-07534-DAB; and *Mark Wiederman v. Spark Energy, Inc., Spark HoldCo, LLC, Major Energy Services, LLC, Major Energy Electric Services, LLC, and Respond Power, LLC*, Case 1:19-cv-04564-DAB.

11. Venue is appropriate in the Southern District of New York under 28 U.S.C. § 1391(b) because Defendants Horowitz and Wiederman live in the Southern District of New York and because the parties agreed to bring any lawsuits related to the MIPA in New York, New York. Additionally, a substantial part of the actions giving rise to the claims occurred in the Southern District of New York. Further, as noted above, Defendants filed and are litigating parallel lawsuits in this district.

### III.  FACTS

**A.    Defendants' Indemnity Obligations.**

12. In the first quarter of 2016, Defendants sold Major Energy to Plaintiff NGE. Defendants Wiederman and Horowitz were, for years prior to the sale and until their termination for cause in March 2019, the President and Senior Advisor to Major Energy respectively.

13. In connection with this sale, Defendants designated Defendant Horowitz as Sellers' Representative, thereby empowering him to take action on behalf of and bind all Defendants with several liability obligations.

14. On or around March 18, 2016, NGE and Defendants executed the MIPA in connection with the sale of Major Energy, which contained various indemnity obligations,

including in the event legal proceedings arose in breach of Defendants' representations and/or contractual obligations under the MIPA.

15. A few months later, NGE dropped Major Energy down to its affiliate Spark Holdco.

16. A material part of the sale of Major Energy to NGE centered around written representations Defendants made to NGE confirming, among other things, that: (1) no event had occurred nor circumstances exist that may give rise to, or serve as a basis for, any Legal Proceeding; (2) compliance with applicable laws; and (3) Defendants' contractual promise to indemnify NGE and its Affiliates, including Major Energy and Spark Holdco, from Losses caused by any breaches of the MIPA by Defendants.

17. In particular, Section 9.2 of the MIPA states:

Indemnification by the Sellers. Each Seller, severally and not jointly (provided that all amounts of escrowed funds under the Escrow Agreement shall be available for indemnification without regard to the several but not joint limitation), shall indemnify and hold harmless Buyer and its directors, officers, employees, Affiliates, owners, agents, attorneys, representatives, successors and permitted assigns (collectively, the "Buyer Indemnified Parties"), from and after the date of this Agreement, against and in respect of all claims, demands, Legal Proceedings, Liens, judgments, penalties, damages, losses, costs and expenses (including reasonable attorneys' fees in connection therewith or in pursuing right to indemnification hereunder) (collectively, "Losses") that the Buyer Indemnified Parties incur to the extent caused by:

(a) the breach of any representation or warranty of the Sellers contained in Article 4 of this Agreement or in any of the Disclosure Schedules or certificates delivered by or on behalf of any Company pursuant to this Agreement; . . . .

18. Three of the obligations triggering indemnity if breached are Sections 4.4, 4.7, and 4.8 of the MIPA. Section 4.4 states in relevant part:

Taxes. . . . Except as set forth in Schedule 4.4: (a) Each Company has filed (taking into account any valid extensions) all Tax Returns required to be filed by it in all jurisdictions in which such returns are required to be filed. Such Tax Returns are true, complete and correct in all material respects and, accordingly, accurately and correctly reflect the Taxes of such Company for the periods covered thereby. No Company is currently the beneficiary of any extension of time within which to file any Tax Return. All Taxes due and owing by each Company which are attributable to the Pre-Closing Tax Periods either (i) shall have

been paid as of the Closing Date, whether or not such Taxes are shown to be payable on such Company's Tax Returns or on subsequent assessments thereto, or (ii) are or shall be accrued on the Financial Statements. The term "Pre-Closing Tax Period" means all taxable periods or portions thereof ending on or prior to the Closing Date ....

(f) No Company has taken any action that would have the effect of deferring any liability for such Company's Taxes from any taxable period ending on or before the Closing Date to any taxable period ending thereafter.

19. Section 4.7 states in relevant part:

<u>Litigation and Regulatory Matters</u>.  Except as set forth on Schedule 4.7, . . . (d) no event has occurred or circumstances exist that may give rise to, or serve as a basis for, any such Legal Proceeding; . . . .

20. Section 4.8 states in relevant part:

<u>Compliance With Laws; Permits</u>.

(a) Each Company [including MEES] is in compliance in all material respects with all Laws applicable to it or its business, properties or assets.

21. In connection with these key provisions in the MIPA, Defendants expressly represented to NGE, for the benefit of NGE and its affiliates, that no unknown tax obligations existed, that no event had occurred nor circumstances existed that may give rise to a Legal Proceeding, and that Major Energy was in compliance with all Laws applicable to it or its business, properties or assets.

22. Schedule 4.4 of the MIPA did not disclose any of the taxes sought herein such that they would be excluded from the representations in Section 4.4.

23. Following the sale of Major Energy, however, legal proceedings or matters were pursued against Major Energy entities in Illinois, Massachusetts, New Jersey, and New York, alleging wrongdoing and/or delinquent tax obligations of Defendants arising prior to the closing of the MIPA.

**B.     The Illinois Lawsuit.**

24.     In March of 2018, the State of Illinois, through its Attorney General, filed suit against MEES for marketing violations, alleging that since at least 2012, MEES had been misleading Illinois consumers into signing up for MEES's energy supply services (the "Illinois Lawsuit").  Ex. B.  These allegations targeted misconduct by Defendants commencing long prior to the sale of Major Energy, and for which Defendants clearly owe indemnification to Plaintiffs under the MIPA.

25.     Following the filing of the Illinois Lawsuit, Defendants Wiederman and Horowitz identified, vetted and approved the selection of outside counsel to represent MEES in the Illinois Lawsuit.  As the then President of Major Energy, Defendant Wiederman was also involved in overseeing the defense of the Illinois Lawsuit with input from Defendant Horowitz, who until his termination for cause in March of 2019, was Senior Advisor to Major Energy.

26.     In the Illinois Lawsuit, the State of Illinois sought millions of dollars of damages and fines against MEES as a result of actions taken under the management of Defendants Wiederman and Horowitz, as well as injunctive relief.

27.     In light of the claims asserted in the Illinois Lawsuit, by May of 2018, Defendants Wiederman and Horowitz, who were still managing the MEES business at that time, made the decision to cease MEES marketing in Illinois and evaluate pretrial resolution options.  Through their involvement with the Illinois Lawsuit and their management of the business prior to the sale of Major Energy, Defendants Wiederman and Horowitz were intimately familiar with the liability risks.

28.     After becoming aware of the filing of the Illinois Lawsuit, and consistent with its indemnification rights under the MIPA, on May 30, 2018, Plaintiff NGE sent its initial claim for

indemnification with respect to the Illinois Lawsuit to Defendants through their representative Defendant Horowitz.

29. In response, Defendants refused to tender indemnification and refused to assume the defense.

30. Based on Defendants' refusal to honor their indemnity obligations, the applicable Plaintiffs had no choice but to proceed with defending and funding the defense of the Illinois Lawsuit, and later pursue reimbursement of such Losses from Defendants following the conclusion of the Illinois Lawsuit.

31. During the defense of the Illinois Lawsuit, Defendants did not challenge the services performed or fees charged by outside counsel, and Defendants Wiederman and Horowitz were well aware from their management roles of the significant exposure associated with the claims asserted against MEES by the State of Illinois for marketing activity that was initiated and overseen by Defendants pre-closing, and directed pre-closing by and under the leadership of Defendant Wiederman and Defendant Horowitz. Post-closing, Defendants Wiederman and Horowitz, as managers of the Major Energy business, determined that Major Energy would stop marketing in Illinois as a response to claims being pursued by the State of Illinois.

32. In addition to their intimate knowledge of the facts giving rise to the Illinois Lawsuit, Defendants understood that the court in the Illinois Lawsuit denied MEES' Motion to Dismiss, and in doing so, raised concerns about MEES's historical marketing practices and the exposure MEES might face in connection with the allegations asserted by the State of Illinois. Therefore, Defendants Wiederman and Horowitz understood a finding of liability was a significant risk, with associated substantial restitution to Illinois consumers, and fines and/or penalties. Accordingly, pretrial settlement opportunities were explored by them.

33. Throughout the duration of the Illinois Lawsuit, Defendants were aware that funds were being held in escrow to cover Defendants' indemnity obligations, including, among other things, for the Illinois Lawsuit.

34. Despite this knowledge, their contractual obligations under the MIPA, and NGE's claim for indemnification, in January of 2019, Defendants unilaterally withdrew from the escrow account, without notice to Plaintiffs, all of the escrow funds, totaling $2,225,000 ("Escrow Funds").

35. Defendants refused to return the Escrow Funds after repeated demands, and thereby necessitated the filing of an arbitration by Plaintiffs against Defendants on May 23, 2019. The focus of the arbitration addressed whether Defendants acted lawfully or unlawfully in unilaterally withdrawing the funds, which were being held in escrow to cover Defendants' indemnity obligations.

36. After significant briefing, submission of evidence and a final arbitration hearing in July of 2019, the arbitrator concluded Defendants breached the escrow agreement by unilaterally withdrawing the Escrow Funds and ordered Defendants to return the full amount of $2,225,000 to escrow. The arbitrator also awarded Plaintiffs essentially all of their attorneys' fees and costs, totaling $278,183.46, which Defendants paid in September of 2019.

37. In parallel to the arbitration proceedings above, in June of 2019, MEES and the Office of the Illinois Attorney General participated in a productive mediation, which led to an agreement in principle to work cooperatively to negotiate final terms to reach a comprehensive settlement of the Illinois Lawsuit.

38. Pursuant to Section 9.5(b) of the MIPA, in July of 2019, Plaintiffs informed Defendants of the progress toward settlement and the monetary amount being contemplated for the settlement.

39. Defendants advised that they did not intend to object or stand in the way of Plaintiffs' effort to finalize the settlement with the State of Illinois.

40. Thereafter, Defendants were notified that a final settlement was reached with the State of Illinois and Plaintiffs provided Defendants with a copy of the draft settlement agreement. Plaintiffs also reminded Defendants of their indemnity and reimbursement obligations.

41. On August 16, 2019, the court in the Illinois Lawsuit entered a final judgment and a consent decree in which MEES agreed to, among other things, pay $2,000,000 to settle the Illinois Lawsuit.  Ex. C.

42. In addition to the $2,000,000 paid to settle the Illinois Lawsuit, as of the filing of the settlement, Plaintiffs had incurred approximately $866,270.20 of attorneys' fees and costs for the defense of the Illinois Suit.  Attorneys' fees and costs continue to accrue in connection with facilitation of the settlement.

43. Following the entry of Final Judgment and Consent Decree by the Illinois Court, Plaintiffs again demanded that Defendants honor their indemnity obligations without the need for further litigation and issue a joint instruction to the Escrow Agent directing it to release the Escrow Funds to Plaintiffs to reimburse Plaintiffs for a portion of the settlement payment and attorneys' fees and costs incurred in connection with the defense and resolution of the Illinois Lawsuit.  The amount of indemnity obligations above the $2.25 million in escrow would need to be paid directly by Defendants.  Defendants refused, thereby necessitating the filing of this Lawsuit to remedy this breach, among others.

C. **Tax Obligations.**

44. Despite their representations in the MIPA, Defendants failed to disclose and/or pay the following state tax obligations (collectively "Tax Obligations") incurred prior to closing of the MIPA and/or under the management of Defendants Horowitz and Wiederman:

- New York - $258,341.47 - representing unpaid taxes and interest for MES for the time period beginning March 1, 2014;

- Massachusetts - $155,940.97 - representing unpaid sales and use taxes and interest for MEES for the time period beginning July 1, 2014; and

- New Jersey - $21,988.90 - representing unpaid taxes and interest for Respond Power for the time period beginning January 2015.

*See* Exs. D and E (letters, with attachments, to Defendants regarding tax obligations). These amounts, which were required to be paid by Sellers pursuant to the respective state tax laws, were not found on Major Energy's tax returns nor accrued on Major Energy's financial statements prior to closing. Instead, they were pursued by audit and/or by demand from the respective states mentioned above. To avoid further interest, penalties or other damages, Plaintiffs paid Defendants' delinquent taxes and sought reimbursement from Defendants. Had Plaintiffs not paid these obligations, they would have resulted in Legal Proceedings. Plaintiffs demanded that Defendants indemnify Plaintiffs for these payments, but Defendants refused.

D. **Defendants Breached Sections 4.4, 4.7, and 4.8 of the MIPA.**

45. As detailed above, Defendants breached Section 4.4 by (i) failing to timely and/or accurately file tax returns disclosing or addressing the Tax Obligations in New York, Massachusetts, and New Jersey; (ii) failing to pay all taxes due and owing by Major Energy attributable to all pre-closing periods; (iii) mismanaging state tax filings while Defendants Horowitz, Wiederman and their appointed Chief Financial Officer, David Sobel, were managing

Major Energy; and (iv) taking actions with the intent of deferring liability for the Tax Obligations until after closing of the MIPA.

46. As detailed above, in breach of Defendants' representations in Section 4.7 of the MIPA, events had occurred, and circumstances existed, that did give rise to a Legal Proceeding against MEES, for which Defendants were obligated to indemnity Plaintiffs, and that could and would have given rise to Legal Proceedings against Major Energy entities for the state Tax Obligations detailed above.

47. Defendants knew at the time they executed the MIPA, and afterward, that events had occurred, and that circumstances existed, that may give rise to or serve as a basis for Legal Proceedings against Major Energy.

48. Accordingly, Defendants materially breached Section 4.7 of the MIPA.

49. Additionally, as detailed above, in breach of Defendants' representations in Section 4.8 of the MIPA, MEES was not, under Defendants' management, in compliance in all material respects with all laws applicable to it in Illinois, New York, New Jersey, and Massachusetts.

50. The Illinois Lawsuit, and evidence adduced therein, as well as other circumstances, demonstrates that MEES, under Defendants' management and/or ownership, was not in compliance at all times with this representation to Plaintiffs.

51. Similarly, events had occurred—specifically, MEES's scrutinized marketing activities under Defendants' leadership—that would reasonably be expected by Defendants to result in the revocation, suspension, lapse or limitation of MEES's certificate of authority permitting it to do business in Illinois or other liability.

52. Significantly, revocation of MEES's certificate of authority was part of the relief sought by the State of Illinois in the Illinois Suit, and Defendants Wiederman and Horowitz's

decision to stop marketing in Illinois dramatically impacted the revenue forecasted by Defendants to NGE prior to the sale of Major Energy.

53. The Tax Obligation demands and audit requests from the states of New York, New Jersey and Massachusetts further demonstrate that Major Energy, while under Defendants' management, was not full in compliance with all state tax laws and state regulations as represented to Plaintiffs.

54. Accordingly, Defendants materially breached Section 4.8 of the MIPA.

### IV.  COUNT I: BREACH OF CONTRACT

55. Plaintiffs repeat and reallege all allegations in the preceding paragraphs.

56. The MIPA is a valid and enforceable contract.

57. As set forth in detail in the preceding paragraphs of this Complaint, Defendants materially breached Sections 4.4, 4.7, and 4.8 of the MIPA in connection with the events and circumstances giving rise to the Illinois Lawsuit, the New York Investigation, the Tax Obligations, and other legal matters.

58. Defendants also materially breached Section 9.2 of the MIPA by refusing to indemnify Plaintiffs for Losses caused by Defendants' material breaches of Sections 4.4, 4.7, and 4.8 of the MIPA.

59. These material breaches have caused Plaintiffs to incur damages, including but not limited to $2,866,270.20 in connection with the settlement of, and the legal fees and costs incurred to defend, the Illinois Lawsuit, which amount continues to increase as the logistics of the settlement with the State of Illinois are facilitated.

60. These material breaches have also caused Plaintiffs to incur damages, including but not limited to $436,271.34 in connection with payment of the Tax Obligations.

61. Additionally, Plaintiffs are entitled to recover from Defendants all of their attorneys' fees and costs incurred in connection with this litigation, pursuant to Section 9.2 of the MIPA.

## V. CONDITIONS PRECEDENT

62. All conditions precedent to Major Energy's claim for relief have been performed or have occurred, or were otherwise met, waived, or excused.

## VI. REQUEST FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that the Court award them:

a. Compensatory damages and prejudgment and post-judgment interest in an amount to be proven at trial;

b. All costs, attorneys' fees, and expenses incurred in connection with this lawsuit;

c. An Order instructing Defendants to immediately release the Escrow Funds to Plaintiffs; and

d. All such other and further relief to which Plaintiffs show themselves entitled.

Dated: November 8, 2019

Respectfully submitted,

**MORGAN, LEWIS & BOCKIUS LLP**

/s/ *Troy S. Brown*
Troy S. Brown
1701 Market Street
Philadelphia, PA 19103
(215) 963-5000
troy.brown@morganlewis.com

Michelle Pector (*pro hac vice forthcoming*)
1000 Louisiana St., Suite 4000
Houston, TX 77002
(713) 890-5000
michelle.pector@morganlewis.com

*Attorneys for Plaintiffs*