**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

MAJOR ENERGY ELECTRIC SERVICES
et al.,

                    Plaintiffs,

         v.                                                    Civ. No. 1:19-cv-10431-NRB

SAUL HOROWITZ et al.,

                    Defendants.

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'**
**MOTION TO DISMISS PLAINTIFFS' COMPLAINT**

Israel Dahan
KING & SPALDING LLP
1185 Avenue of the Americas
New York, NY 10036
Telephone No.:  (212) 556-2114
idahan@kslaw.com

*Counsel for Defendants*

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................1

STATEMENT OF FACTS ....................................................................................................2

    A.  Relevant Provisions of the MIPA................................................................................3

    B.  The Illinois Suit............................................................................................................5

    C.  The Tax Bills...............................................................................................................5

LEGAL STANDARD ..........................................................................................................6

ARGUMENT ....................................................................................................................7

   I.  NEW YORK PRINCIPLES OF CONTRACT INTERPRETATION,
      PARTICULARLY INDEMNIFICATION PROVISIONS ...................................................7

  II.  PLAINTIFFS FAIL TO PLEAD A PLAUSIBLE INDEMNIFICATION CLAIM
      UNDER THE MIPA FOR THE ILLINOIS SUIT .............................................................8

    A.  The Illinois Suit Is Not A Breach Of Section 4.7 Of The MIPA....................................8

    B.  The Illinois Suit Is Not A Breach Of Section 4.8 Of The MIPA..................................10

 III.  PLAINTIFFS ALSO FAIL TO STATE A PLAUSIBLE INDEMNIFICATION
      CLAIM UNDER THE MIPA FOR THE TAX BILLS .......................................................14

    A.  The Tax Bills Are Not A Breach Of Section 4.4 Of The MIPA ...................................14

    B.  The Tax Bills Are Also Not A Breach Of Sections 4.7 Or 4.8 Of The MIPA ..............16

CONCLUSION ...............................................................................................................18

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Am. Smelting & Ref. Co. v. Stettenheim,*
    164 N.Y.S. 253 (App. Div. 1917) ............................................................................9

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) ..........................................................................................6

*Ashwood Capital, Inc. v. OTG Mgt., Inc.,*
    948 N.Y.S.2d 292 (App. Div. 2012) ....................................................................13

*Batavia Turf Farms, Inc. v. County of Genesee,*
    659 N.Y.S.2d 681 (App. Div. 1997) ....................................................................11

*Berman v. Sugo LLC,*
    580 F. Supp. 2d 191 (S.D.N.Y. 2008) ...................................................................7

*Borst v. Bovis Lend Lease LMB, Inc.,*
    957 N.Y.S.2d 859 (App. Div. 2013) ....................................................................11

*CIFG Assur. N. Am., Inc. v. Bank of Am., N.A.,*
    No. 654028/12, 2013 WL 5380385 (N.Y. Sup. Ct. Sept. 23, 2013) .........................8

*Cortec Indus., Inc. v. Sum Holding L.P.,*
    949 F.2d 42 (2d Cir. 1991) .................................................................................6

*Cruden v. Bank of N.Y.,*
    957 F.2d 961 (2d Cir. 1992) .................................................................................7

*De Figueroa v. New York,*
    403 F. Supp. 3d 133 (E.D.N.Y. 2019) ......................................................7, 10, 17

*Deutsche Bank Nat'l Tr. Co. v. Quicken Loans Inc.,*
    810 F.3d 861 (2d Cir. 2015) ...............................................................................14

*Fresh Del Monte Produce N.V. v. Eastbrook Caribe A.V.V.,*
    836 N.Y.S.2d 160 (App. Div. 2007) .....................................................................8

*Galli v. Metz,*
    973 F.2d 145 (2d Cir. 1992) .................................................................................9

*Ginx, Inc. v. Soho Alliance,*
    720 F. Supp. 2d 342 (S.D.N.Y. 2010) ...................................................................6

*Greenfield v. Philles Records, Inc.*,
    98 N.Y.2d 562 (N.Y. 2002) ...........................................................................................7

*Harris v. Mills*,
    572 F.3d 66 (2d Cir. 2009)...........................................................................................6

*Hooper Assoc., Ltd. v. AGS Computers, Inc.*,
    548 N.E.2d 903 (1989)..................................................................................................8

*Kaplan v. Kaplan*,
    106 N.Y.S.3d 102 (App. Div. 2019) ..........................................................................9

*Kee's Chocolates LLC v. Charles Thompson LLC*,
    No. CV-00176/18 (N.Y. Civ. Ct. Sept. 26, 2019)....................................................10

*Kleinberg v. Radian Grp., Inc.*,
    No. 01 Civ. 9295 (RMB)(GWG), 2002 WL 31422884 (S.D.N.Y. Oct. 29,
    2002) .............................................................................................................................13

*Law Debenture Tr. Co. of N.Y. v. Maverick Tube Corp.*,
    595 F.3d 458 (2d Cir. 2010).................................................................................8, 13

*Lipsky v. Commonwealth United Corp.*,
    551 F.2d 887 (2d Cir. 1976).......................................................................................11

*In re Merrill Lynch & Co. Research Reports Sec. Litig.*,
    218 F.R.D. 76 (S.D.N.Y. 2003) .................................................................................12

*Mount Vernon Fire Ins. Co. v. Munoz Trucking Corp.*,
    213 F. Supp. 3d 594 (S.D.N.Y. 2016).......................................................................10

*Nat'l Credit Union Admin. Bd. v. Deutsche Bank Nat'l Tr. Co.*,
    410 F. Supp. 3d 662 (S.D.N.Y. 2019).......................................................................15

*United States ex rel. O'Donnell v. Countrywide Home Loans, Inc.*,
    822 F.3d 650 (2d Cir. 2016).......................................................................................14

*Pani v. Empire Blue Cross Blue Shield*,
    152 F.3d 67 (2d Cir. 1998)...........................................................................................6

*In re Platinum & Palladium Commodities Litig.*,
    828 F. Supp. 2d 588 (S.D.N.Y. 2011).......................................................................12

*RSM Prod. Corp. v. Fridman*,
    643 F. Supp. 2d 382 (S.D.N.Y. 2009), *aff'd*, 387 F. App'x 72 (2d Cir. 2010)........12

*Staehr v. Hartford Fin. Servs. Grp., Inc.*,
    547 F.3d 406 (2d Cir. 2008).......................................................................................13

**Other Authorities**

Federal Rule of Civil Procedure 12(b)(6) ......................................................................1, 6

Defendants Saul Horowitz, Mark Wiederman, Asher Fried, Michael Bauman, and Mark Josefovic (collectively, the "Sellers") hereby move to dismiss Plaintiffs' Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).  For the reasons discussed below, the Court should grant the Sellers' motion.

## PRELIMINARY STATEMENT

In March 2016, the Sellers sold Major Energy Electric Services, LLC ("MEES"), Major Energy Services, LLC ("MES"), and Respond Power, LLC ("RP") (collectively, "Major Energy") to Plaintiff National Gas & Electric, LLC ("Buyer" or "NGE") pursuant to, among other transaction documents, the Membership Interest Purchase Agreement ("MIPA").   In October 2017, the Sellers filed an action against NGE and one of its affiliated entities, Spark Energy, Inc. ("Spark"), alleging claims for breach of the MIPA and other transaction documents, and for tortious interference with contract.  That action is pending before Judge Oetken and is scheduled for trial beginning March 2, 2020.

In this subsequently filed action, Plaintiffs allege that the Sellers breached the terms of the MIPA by refusing to indemnify them for losses purportedly suffered from: (i) a March 2018 settled lawsuit by the Illinois Attorney General, alleging that Major Energy was misleading Illinois consumers between 2012 and 2018 (the "Illinois Suit"); and (ii) certain state tax bills allegedly reflecting Major Energy tax liability before the closing of the MIPA (the "Tax Bills").  More specifically, Plaintiffs allege that they incurred $2.8 million in losses (including legal fees) in connection with the Illinois Suit they recently settled pursuant to a settlement consent decree in which they and the Illinois Attorney General both acknowledged that "[n]othing contained in this Consent Decree is intended by the parties to be deemed or construed as an admission of liability by Major [Energy]" and in which Major Energy (with the approval of the other Plaintiffs) explicitly denied all of the allegations against it ("Illinois Consent Decree").  In other

words, all parties agreed that the Illinois Suit was being settled without any finding or admission of liability and wrongdoing by Major Energy pre-sale or post-sale.  Plaintiffs further allege that they incurred $436,271.34 in losses relating to their recent payment of Major Energy's pre-sale tax liabilities in New York, New Jersey, and Massachusetts.

Plaintiffs claim that the Sellers must indemnify them for these losses from the Illinois Suit and Tax Bills pursuant to Section 9.2 of the MIPA, which allegedly requires the Sellers to indemnify Plaintiffs for "Losses" incurred only "to the extent caused by the breach of certain representations and warranties" made by the Sellers.  Plaintiffs assert that the Illinois Suit and the Tax Bills are breaches of Sellers' representations in Sections 4.4 (Taxes), 4.7 (Litigation and Regulatory Matters), and 4.8 (Compliance with Laws) of the MIPA.  As demonstrated below, Plaintiffs have not alleged, and cannot allege, plausible claims for indemnification against the Sellers relating to either the settled Illinois Suit or the Tax Bills.  There has been no underlying breach of Sections 4.4, 4,7, or 4.8 by the Sellers to give rise to a claim for indemnification.

Accordingly, Plaintiffs' indemnification claim falls outside of the scope of the parties' indemnification agreement, and therefore, their Complaint must be dismissed for failure to state a claim upon which relief could be granted.

## STATEMENT OF FACTS

In March 2016, the Sellers agreed to sell Major Energy to NGE pursuant to (among other documents) the MIPA.  *See* Compl. ¶ 14.  In the MIPA, Sellers and NGE made certain representations and warranties to each other, including those in Sections 4.4 (Taxes), 4.7 (Litigation and Regulatory Matters), and 4.8 (Compliance with Laws) of the MIPA.  *Id.* Ex. A at 27, 31-32.  Plaintiffs allege that the Sellers breached these representations and warranties and are thereby liable to indemnify Plaintiffs pursuant to Section 9.2 of the MIPA.  *Id.* ¶ 57.

### A.    Relevant Provisions of the MIPA

Section 4.4 provides, in pertinent part, as follows:

4.4    <u>Taxes</u>.  Except as set forth in <u>Schedule 4.4</u>:
(a)  Each Company has filed (taking into account any valid extensions) all Tax Returns required to be filed by it in all jurisdictions in which such returns are required to be filed.  Such Tax Returns are true, complete and correct in all material respects and, accordingly, accurately and correctly reflect the Taxes of such Company for the periods covered thereby.  No Company is currently the beneficiary of any extension of time within which to file any Tax Return.  All Taxes due and owing each Company which are attributable to the Pre-Closing Tax Periods either (i) shall have been paid as of the Closing Date, whether or not such Taxes are shown to be payable on such Company's Tax Returns or on subsequent assessments thereto, or (ii) are or shall be accrued on the Financial Statements.  The term "<u>Pre-Closing Tax Period</u>" means all taxable periods or portions thereof ending on or prior to the Closing Date . . . .

*Id.* Ex. A at 27-28.  In Schedule 4.4—which is referenced and incorporated in the MIPA, but

which Plaintiffs conveniently failed to attach their Complaint—Sellers disclosed that:

The following Tax Returns are not expected to be filed by Closing and an extension has been requested in each case as of the Closing Date:

1. 2015 Form 1065 and all related state and local returns for MES, MEES and RP

2. Any 2016 interim Tax Return for such entities

Major Energy Electric Service LLC ("MEES") received a notice from the New York City Department of Finance dated February 24, 2016, advising MEES that the NYC Dept. of Finance wishes to examine the book and records of MEES for the tax periods 07/01/13 through 12/31/15, and requesting certain information from MEES as set forth in such notice.  This audit is currently ongoing.

*See* Declaration of Israel Dahan ("Dahan Decl."), Ex. 1.

Section 4.7 of the MIPA provides as follows:

4.7    <u>Litigation and Regulatory Matters</u>:  Except as set forth on Schedule 4.7, (a) there is no pending or, to the Knowledge of the Sellers, threatened Legal Proceedings to which any Company is a party (either as plaintiff or defendant), to which its assets are subject, or to which any Seller or any Affiliate of any Seller is a party, relating to the Companies, including any claims, demands, disputes, lawsuits, judicial, regulatory, or other Local Proceedings, Orders, or other breaches of Legal Requirements or similar matters; (d) no event has occurred or

circumstances exist that may give rise to, or serve as a basis for, any such Legal Proceedings . . . .

*See* Compl. Ex. A at 31-32.

Lastly, Section 4.8 concerns "Compliance With Laws; Permits" and represents that Major Energy "is in compliance in all material respects with all Laws applicable to it or its business, properties, or assets." *Id.* Ex. A at 32.

Both Sellers and Buyer agreed that, to the extent Sellers breach Sections 4.4, 4.7, and 4.8, the Buyer may seek indemnification from Sellers. *Id.* Ex. A at 55-61. Specifically, Section 9.2, provides in relevant part, as follows:

> 9.2    <u>Indemnification by the Sellers</u>. Each Seller, severally and not jointly (provided that all amounts of escrowed funds under the Escrow Agreement shall be available for indemnification without regard to the several but not joint limitation), shall indemnify and hold harmless Buyer and its directors, officers, employees, Affiliates, owners, agents, attorneys, representatives, successors and permitted assigns (collectively, the "<u>Buyer Indemnified Parties</u>"), from and after the date of this Agreement against and in respect of all claims, demands, Legal Proceedings, Liens, judgments, penalties, damages, losses, costs and expenses (including reasonable attorneys' fees in connection therewith or in pursuing right to indemnification hereunder) (collectively, "<u>Losses</u>") that the Buyer Indemnified Parties incur to the extent caused by:
>
> > (a) the breach of any representation or warranty of the Sellers contained in <u>Article 4</u> of this Agreement or in any of the Disclosure Schedules or certificates delivered by or on behalf of any Company pursuant to this Agreement . . . .

*Id.* Ex. A at 56. This indemnity obligation is, however, limited in a variety of ways. *Id.* One such limitation, for example, is provided in Section 9.4(a) of the MIPA, which states that the Sellers "shall have no liability pursuant to <u>Section 9.2(a)</u> and <u>Section 9.2(c)</u> until the Losses incurred by the Buyer Indemnified Parties shall exceed Six Hundred Thousand Dollars ($600,000.00) ("<u>Losses Threshold</u>"), in which event the Sellers shall be liable to the Buyer Indemnified Parties solely for all Losses in excess of such amount." *Id.*

### B.     The Illinois Suit

Sometime in March 2018, the Illinois Attorney General filed the Illinois Suit against MEES for alleged violations of marketing guidelines since at least 2012.  *See* Compl. Ex. B.  On August 16, 2019, Plaintiffs entered into a settlement with the Illinois Attorney General concerning MEES' alleged misleading of Illinois consumers into signing up for MEES' energy supply services.  *See* Compl. Ex. C.  The Illinois Suit settlement was documented in the August 16, 2019 Illinois Consent Decree.  *Id*.  The Consent Decree was entered into with the knowledge and approval of all Plaintiffs.  *See* Dahan Decl. Ex. 2.

In the Illinois Consent Decree, Major Energy denied any liability for violations of Illinois laws, and both Major Energy and the Illinois Attorney General agreed that "[n]othing contained in this Consent Decree is intended by the parties to be deemed or construed as an admission of liability by Major [Energy]."  Compl. Ex. C at ¶¶ 6-7.  Major Energy and the Illinois Attorney General, "[entered] into [the] Consent Decree solely for the purpose of avoiding costly and protracted litigation."  *Id*.  Thus, at the time of the settlement, there was no adjudication of the alleged regulatory violations by Major Energy or admission of wrongdoing by Major Energy.  *Id*. And to date, there has been no adjudication of the Illinois Attorney General's claims by any court of law or finding that MEES violated any applicable law, rule, or regulation.

### C.     The Tax Bills

Sometime in August 2019, Plaintiffs informed Sellers about certain Tax Bills that Plaintiffs paid in New York, New Jersey, and Massachusetts.  *See* Compl. Exs. D & E. Plaintiffs, without the consent of the Sellers, had settled Major Energy's Tax Bills for $436,271.34.  *See* Compl. at ¶ 44.  The Tax Bills are allegedly tax obligations owed by (1) MES, in New York in the amount of $258,341.47, for the time period beginning March 1, 2014, (2) MEES, in Massachusetts in the amount of $155,940.97, for the time period beginning July 1,

2014, and (3) RP, in New Jersey in the amount of $21,988.90, for the time period beginning January 2015.  *See* Compl. ¶ 44.  Plaintiffs allege that they paid the Tax Bills strictly to "avoid further interest, penalties or other damages."  *Id*.  Plaintiffs do not allege that any of the tax authorities had begun Legal Proceedings against Major Energy at the time they paid-off the Tax Bills.  *Id*.

## **LEGAL STANDARD**

In deciding a Rule 12(b)(6) motion to dismiss, the Court applies a "plausibility standard," which is guided by "[t]wo working principles."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)); *accord Harris v. Mills*, 572 F.3d 66, 71-72 (2d Cir. 2009).  First, although the Court must accept all allegations as true, this "tenet" is "inapplicable to legal conclusions"; thus, "[t]hreadbare recitals of the elements of a cause of action supported by mere conclusory statements, do not suffice."  *Iqbal*, 556 U.S. at 678; *accord Harris*, 572 F.3d at 72.  Second, only complaints that state a "plausible claim for relief" can survive a Rule 12(b)(6) motion to dismiss.  *Iqbal*, 556 U.S. at 679.  Determining whether a complaint does so is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Id*.; *accord Harris*, 572 F.3d at 72.

Generally, in deciding a motion to dismiss, the Court is confined to "the allegations contained within the four corners of [the] complaint."  *Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 71 (2d Cir. 1998) (citation omitted).  However, this has been interpreted broadly to include any document attached to the complaint, any statements or documents incorporated in the complaint by reference, any document on which the complaint heavily relies, and anything of which judicial notice may be taken.  *See Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 44 (2d Cir. 1991) ("Plaintiffs' failure to include matters of which as pleaders they had notice and which were integral to their claim—and that they apparently most wanted to avoid—may not

serve as a means of forestalling the district court's decision on the motion."); *see also Ginx, Inc. v. Soho Alliance*, 720 F. Supp. 2d 342, 352 (S.D.N.Y. 2010); *accord Berman v. Sugo LLC*, 580 F. Supp. 2d 191, 200-201 (S.D.N.Y. 2008) (court may "consider documents that the pleader either possessed or knew about and that are integral to the complaint . . . because the pleading party has actual notice of the documents and relied upon them in bringing suit, even if they are not explicitly referenced"). Additionally, a court "need not feel constrained to accept as truth conflicting pleadings that make no sense, or that would render a claim incoherent, or that are contradicted either by statements in the complaint itself or by documents upon which its pleadings rely, or by facts of which the court may take judicial notice." *De Figueroa v. New York*, 403 F. Supp. 3d 133, 149 (E.D.N.Y. 2019) (citation omitted).

As demonstrated below, in view of the unambiguous provisions of the MIPA on which Plaintiffs rely in their Complaint, Plaintiffs fail to adequately plead a viable claim for contractual indemnification either with respect to the Illinois Suit or Tax Bills and, therefore, the Complaint should be dismissed.

## ARGUMENT

## I.  NEW YORK PRINCIPLES OF CONTRACT INTERPRETATION, PARTICULARLY INDEMNIFICATION PROVISIONS

New York law governs the interpretation of the rights and obligations of the parties under the MIPA. *See* Compl. Ex. A at 65-66. "Under New York law, a written contract is to be interpreted so as to give effect to the intention of the parties as expressed in the unequivocal language they have employed." *Cruden v. Bank of N.Y.*, 957 F.2d 961, 976 (2d Cir. 1992). "The best evidence of what parties to a written agreement intend is what they say in their writing." *Greenfield v. Philles Records, Inc.*, 98 N.Y.2d 562, 569 (N.Y. 2002) (internal citation and quotation marks omitted). Thus, "courts may not by construction add or excise terms, nor distort

the meaning of those used and thereby make a new contract for the parties under the guise of interpreting the writing." *Law Debenture Tr. Co. of N.Y. v. Maverick Tube Corp.*, 595 F.3d 458, 468 (2d Cir. 2010) (internal citation and quotation marks omitted).

Moreover, under New York law, an indemnification provision "must be strictly construed to avoid reading into it a duty which the parties did not intend to be assumed." *Hooper Assoc., Ltd. v. AGS Computers, Inc.*, 548 N.E.2d 903, 905 (1989). Indemnification "should not be found unless it can be clearly implied from the language and purpose of the entire agreement and the surrounding facts and circumstances." *Id.*; *see also CIFG Assur. N. Am., Inc. v. Bank of Am., N.A.*, No. 654028/12, 2013 WL 5380385, at *6 (N.Y. Sup. Ct. Sept. 23, 2013) ("When a party is under no legal duty to indemnify, a contract assuming that obligation must be strictly construed to avoid reading into it a duty which the parties did not intend to be assumed.") (internal citation and quotation marks omitted). Simply put, the intent to indemnify and the scope of the indemnification must be clear and unmistakable. *Hooper*, 548 N.E.2d at 905*; see also Fresh Del Monte Produce N.V. v. Eastbrook Caribe A.V.V.*, 836 N.Y.S.2d 160, 164 (App. Div. 2007).

## II.   PLAINTIFFS FAIL TO PLEAD A PLAUSIBLE INDEMNIFICATION CLAIM UNDER THE MIPA FOR THE ILLINOIS SUIT

Plaintiffs have not alleged—and cannot allege—facts showing that the Illinois Suit is a breach of either Section 4.7 or 4.8 of the MIPA.[1]   And without a predicate breach, Plaintiffs are not entitled to the indemnification they have demanded from the Sellers.

### A.   The Illinois Suit Is Not A Breach Of Section 4.7 Of The MIPA

As a plain reading of Section 4.7 establishes, this provision concerns only "*pending* or, to the Knowledge of the Sellers, *threatened* Legal Proceedings." Compl. Ex. A at 31-32 (emphasis added). Plaintiffs do not (and cannot) allege that the Illinois Suit was "pending" or "threatened"

---

[1] Plaintiffs do not allege a breach of Section 4.4 of the MIPA with respect to the Illinois Suit.

at the time of the execution of the MIPA.  Indeed, the Illinois Suit was not filed until **two-years after** the execution of the MIPA.  *See* Compl. Ex. B.

In their pre-motion letter to the Court, Plaintiffs assert that the "pending" or "threatened" limitation on Legal Proceedings does not apply to subsection (d) of Section 4.7 because the words "pending" and "threatened" appear only in subsection (a).  That argument ignores the fact that subsection (d) does not refer simply to "Legal Proceedings" but rather only to "*such* Legal Proceedings"—i.e., the ones described earlier ("pending" and "threatened") in subsection (a). *See Kaplan v. Kaplan*, 106 N.Y.S.3d 102, 105 (App. Div. 2019) ("A contract should be read as a whole, with every part interpreted with reference to the whole; if possible, the contract will be interpreted so as to give effect to its general purpose.").  *See, e.g., Am. Smelting & Ref. Co. v. Stettenheim,* 164 N.Y.S. 253, 256 (App. Div. 1917) ("[T]he word 'such,' when used in a contract or statute, must, in order to be intelligible, refer to some antecedent, and will generally be construed to refer to the last antecedent in the context, unless some compelling reason appears why it should not be so construed.").

Because the Illinois Suit was neither a pending nor a threatened action at the time the representation contained in Section 4.7 was made by the Sellers, they did not breach Section 4.7 when they executed the MIPA.[2]

---

[2] Moreover, it cannot be ignored that, in Schedule 4.7, the Sellers did disclose a then-pending action in Illinois based on substantially similar events and circumstances as the Illinois Suit, again negating the concept that Section 4.7 was breached even under an incorrect reading of Section 4.7(d).  *See* MIPA Section 7.11(b)(ii) (Sellers have a no sandbagging provision); *see also Galli v. Metz*, 973 F.2d 145, 151 (2d Cir. 1992) ("Where a buyer closes on a contract in the full knowledge and acceptance of facts disclosed by the seller which would constitute a breach of warranty under the terms of the contract, the buyer should be foreclosed from later asserting the breach. In that situation, unless the buyer expressly preserves his rights under the warranties . . . , we think the buyer has waived the breach.").

### B.      The Illinois Suit Is Not A Breach Of Section 4.8 Of The MIPA

As described above, in Section 4.8, the Sellers represented that "(a) Each [Major Energy] Company is in compliance in all material respects with all Laws applicable to it or its business, properties or assets." *See* Compl. Ex. A at 32.  Plaintiffs have not plausibly alleged that Sellers' representation in Section 4.8 was false when made, and the settled Illinois Suit does not establish otherwise. *See De Figueroa*, 403 F. Supp. 3d at 149 (explaining that the court need not accept as true, allegations in complaints that are contradicted either by statements in the complaint itself or by documents upon which the pleadings rely, or by facts of which the court may take judicial notice).

The Illinois Consent Decree provides that "Major denies" each and every allegation of wrongdoing in the complaint filed by the Illinois Attorney General and that "[n]othing contained in this Consent Decree is intended by the parties to be deemed or construed as an admission of liability by Major." *See* Compl. Ex. C ¶ 7.  "The parties are entering into this Consent Decree solely for the purpose of avoiding costly and protracted litigation." *Id*.  Thus, the Illinois Suit remains forever as merely unproven *allegations* of Major Energy's purported non-compliance with laws.  Indeed, no court of law has found, and no party has admitted, that Major Energy was not in compliance with all laws applicable to its business or that any losses were caused by such a lapse in compliance.

Under New York law, an indemnity obligation is not triggered by unproven *allegations* of wrongdoing in a third-party action. *See Mount Vernon Fire Ins. Co. v. Munoz Trucking Corp.*, 213 F. Supp. 3d 594, 604 (S.D.N.Y. 2016) (holding that there is no duty to indemnify where the plaintiff's liability in the underlying litigation had not yet been determined); *see also Kee's Chocolates LLC v. Charles Thompson LLC*, No. CV-00176/18 (N.Y. Civ. Ct. Sept. 26, 2019) (denying landlord's claim for indemnification based on unproven allegations in a third-party

complaint that tenant failed to comply with certain ADA laws: "Paragraph 8 of the lease requires a finding of breach or fault by Tenant in order to trigger indemnification. There has been no finding of a breach or fault by Tenant in federal court or state court . . . .").

Moreover, New York law is clear that "a compromise or a settlement may not be regarded as evidence of liability, or as an admission." *Batavia Turf Farms, Inc. v. County of Genesee*, 659 N.Y.S.2d 681, 683 (App. Div. 1997) (quoting *Bigelow-Sanford, Inc. v. Specialized Commercial Floors of Rochester*, 433 N.Y.S.2d 931, 933 (App. Div. 1980)).  Indeed, New York state courts have held that a third party cannot use a "no admit" settlement to establish a defendant's liability in a separate action.  For example, in *Borst v. Bovis Lend Lease LMB, Inc.*, 957 N.Y.S.2d 859 (Mem) (App. Div. 2013), the court found that a non-prosecution agreement between the defendant and the district attorney's office was *inadmissible* as proof of liability where the agreement specifically provided that the defendant had not admitted guilt.  The court noted that the "factual statements contained in the agreement were relevant only for the purposes of the compromise" and that "the agreement and related documents amount[ed] to a pre-indictment settlement agreement that was neither judicially endorsed nor approved." *Id.* Similarly, in *J.P. Morgan Sec. Inc. v. Vigilant Insurance Co.*, the court found that an SEC settlement in which Bear Stearns did not admit guilt and expressly "preserved [its] ability to contest its liability" did not have preclusive effect against Bear Stearns in a subsequent litigation with its insurer.  2 N.Y.S.3d 415, 421 (App. Div. 2015).

Indeed, federal courts repeatedly have stricken allegations in complaints based on regulatory complaints or consent settlements as those allegations are meaningless to establishing liability.  *See, e.g., Lipsky v. Commonwealth United Corp.*, 551 F.2d 887, 893 (2d Cir. 1976) (holding that consent judgment could not "be used as evidence in subsequent litigation between

11

that corporation and another party"); *see also In re Platinum & Palladium Commodities Litig.*, 828 F. Supp. 2d 588, 593-94 (S.D.N.Y. 2011) ("Although the CFTC Order included certain factual findings, it nevertheless was the product of a settlement agreement between the CFTC and the Respondents, not an adjudication of the underlying issues in the CFTC proceedings. Plaintiffs are therefore prohibited from relying on the CFTC Order to plead the 'underlying facts of liability.'"); *RSM Prod. Corp. v. Fridman*, 643 F. Supp. 2d 382, 403 (S.D.N.Y. 2009) ("Second Circuit case law is clear that paragraphs in a complaint that are either based on, or rely on, complaints in other actions that have been dismissed, settled, or otherwise not resolved, are, as a matter of law, immaterial within the meaning of [Rule 12(f)]."), *aff'd*, 387 F. App'x 72 (2d Cir. 2010); *In re Merrill Lynch & Co. Research Reports Sec. Litig.*, 218 F.R.D. 76, 78-79 (S.D.N.Y. 2003) (striking all allegations in a complaint that "refer to or rely on" earlier unadjudicated regulatory complaints).

Critically, if the parties intended for there to be a right to indemnification even upon mere *allegations* of wrongdoing, they should and would have included that specific indemnification language in the MIPA.  Indeed, the parties knew how to do so and did include such broader language in discussing the indemnification rights of the Escrow Agent under the Escrow Agreement.  *See* Dahan Decl. Ex. 3.[3]  Specifically, in Section 3.7 of the Escrow Agreement, the parties agreed that the Escrow Agent would be indemnified against "Losses" that are "incurred . . . as a result of Claims." *Id*. at 6.  The term "Claims" is defined and broadly includes even those claims that are "*groundless, false or fraudulent*, so long as the claim, lawsuit, cause of action or other legal action or proceeding is *alleged* or determined" to arise out of certain acts or omissions.  *Id.* (emphases added).  In contrast, in Section 9.2 of the MIPA, the parties did not

---

[3] The Escrow Agreement is an Exhibit to the MIPA and was heavily referenced by Plaintiffs in their Complaint. *See* Compl. at 33-36, 43.

define the term "Claims" and, more significantly, did not provide indemnity to NGE (or others) for losses incurred in defending against groundless claims or mere allegations of liability. Instead, the parties agreed solely to indemnify Losses incurred as a result of an *actual* "breach" of the MIPA by the Sellers.   *See Law Debenture Tr. Co. of N.Y. v. Maverick Tube Corp.*, 595 F.3d 458, 468 (2d Cir. 2010) ("[C]ourts may not by construction add or excise terms, nor distort the meaning of those used and thereby make a new contract for the parties under the guise of interpreting the writing."); *Kleinberg v. Radian Grp., Inc.*, No. 01 Civ. 9295 (RMB)(GWG), 2002 WL 31422884, at *6 (S.D.N.Y. Oct. 29, 2002) (plaintiff's argument that the phrase "as applicable" should be construed to mean "the greater of" was "belied by the fact that the defendant used express terminology elsewhere in the Agreement when they intended to grant [plaintiff] the 'greater' of two options"); *Ashwood Capital, Inc. v. OTG Mgt., Inc.*, 948 N.Y.S.2d 292, 297 (App. Div. 2012) ("[C]ourts should be extremely reluctant to interpret an agreement as impliedly stating something which the parties have neglected to specifically include.").[4]

Thus, consistent with the New York law discussed above and the unambiguous terms of the relevant provision of the MIPA, Plaintiffs cannot state a viable claim against the Sellers for indemnification related to the Illinois Suit, and dismiss such claim.[5]

---

[4] Even Plaintiffs recognize that they do not have a right to indemnification from the Illinois Suit. In its public filings since the filing of the Illinois Suit, including its recent quarterly filing after the settlement of the Illinois Suit, Spark discloses the pending material legal proceedings to which it and its subsidiaries are parties.  For several of these legal proceedings, Spark notes that it believes it has full indemnity coverage for any actual exposure in that proceeding. Conspicuously, for the Illinois Suit, however, Spark makes no such "indemnity coverage" representation, even post-settlement of the suit.  *See, e.g.,* Dahan Decl. Ex. 4 at 32-34; and Dahan Decl. Ex. 5 at 113-14.  *Staehr v. Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406, 425 (2d Cir. 2008) (holding that on a motion to dismiss, "it is proper to take judicial notice of the fact that . . . regulatory filings contained certain information, without regard to the truth of their contents").

[5] Of note, Plaintiffs' demand for indemnification of the full $2,866,270.20 in losses they have purportedly incurred to date in connection with the Illinois Suit (the settlement amount, plus legal fees) is unfounded and contrary to the terms of the MIPA.  As the Illinois Consent Decree

## III.   PLAINTIFFS ALSO FAIL TO STATE A PLAUSIBLE INDEMNIFICATION CLAIM UNDER THE MIPA FOR THE TAX BILLS

Plaintiffs have not alleged, and cannot allege, facts sufficient to prove a claim for indemnity based on the Tax Bills under Sections 4.4, 4.7, or 4.8 of the MIPA.  In addition, the Tax Bills is significantly below the $600,000 Loss Threshold contained in Section 9.4(a) of the MIPA and, therefore, even if Plaintiffs were able to demonstrate the requisite breach of Sections 4.4, 4.7, or 4.8 of the MIPA with respect to the Tax Bills, the Sellers have no indemnification liability for the Tax Bills.

### A.   The Tax Bills Are Not A Breach Of Section 4.4 Of The MIPA

Plaintiffs contend that the Tax Bills constitute a breach of Section 4.4 of the MIPA in which the Sellers represented that, "[e]xcept as set forth in Schedule 4.4," Major Energy filed "all Tax Returns required to be filed" and that all taxes for periods before closing either were "paid as of the Closing Date" or "accrued on the Financial Statements."  *See* Compl. Ex. A at 27-28.  The Complaint conveniently leaves out the threshold limitation on this representation and warranty: what the Sellers disclosed in Schedule 4.4.  As described above, the Sellers made the following disclosure in Schedule 4.4 of the MIPA:

---

makes clear, the Illinois Suit alleges wrongdoing covering a period from 2012 through April 2018.  In other words, the Illinois Suit alleges wrongdoing during a period of two years *after* the execution of the MIPA and after the representations contained in Sections 4.7 and 4.8 were made.  *See* Compl. Ex. B ¶¶ 97-107; 118-129.  Plaintiffs have absolutely no basis to seek indemnification for such post-MIPA alleged wrongdoing.  *See United States ex rel. O'Donnell v. Countrywide Home Loans, Inc.*, 822 F.3d 650, 664 (2d Cir. 2016) ("The use of a present-tense verb in a contract indicates that the parties intend the act—here, the making of the representation—to occur at the time of contract execution, not in the future."); *see also Deutsche Bank Nat'l Tr. Co. v. Quicken Loans Inc.*, 810 F.3d 861, 866 (2d Cir. 2015) ("A representation of present fact is either true or false—and the contract therefore performed or breached—if the underlying fact was true or false at the time the representation was made.").  Additionally, any indemnification right with respect to the Illinois Suit would also be subject to and limited by the $600,000 Losses Threshold set forth in Section 9.4(a) of the MIPA, and further discussed below.

The following Tax Returns are expected to be unfiled and an extension requested as of the Closing Date:

1. 2015 Form 1065 and all related state and local returns for MES, MEES and RP.

2. Any 2016 interim Tax Returns for such entities Major Energy Electric Service LLC ("MEES") received a notice from the New York City Department of Finance dated February 24, 2016 advising MEES that the NYC Dept. of Finance wishes to examine the book and records of MEES for the tax periods 07/01/13 through 12/31/15, and requesting certain information from MEES as set forth in such notice. This audit is currently ongoing. (emphases added.)

The Tax Bills at issue here all fall into the above disclosure as they each emanate from the 2015 tax return period—the period disclosed in Schedule 4.4 as one in which returns would be "unfiled." *See* Dahan Decl. Ex. 1.  Accordingly, Plaintiffs' contention that the Tax Bills were undisclosed pre-closing in breach of Section 4.4 of the MIPA is contradicted by the express written terms of the MIPA and the incorporated disclosure schedules. *See* Compl. Ex. A at 27-28; *see also Nat'l Credit Union Admin. Bd. v. Deutsche Bank Nat'l Tr. Co.*, 410 F. Supp. 3d 662, 681 (S.D.N.Y. 2019) ("[W]here a conclusory allegation in the complaint is contradicted by a document attached to the complaint, the document controls and the allegation *is not accepted as true*.") (emphasis added).

But even if the Sellers' had breached Section 4.4, Plaintiffs' claim for indemnification still fails because it would be subject to and completely subsumed in the $600,000.00 Losses Threshold set forth in Section 9.4(a) of the MIPA. *See* Compl. Ex. A at 56.  As discussed above, Section 9.4(a) expressly provides that "the Sellers shall have *no [indemnification] liability pursuant to Section 9.2(a)* . . . until the Losses incurred by the Buyer Indemnified Parties *shall exceed Six Hundred Thousand Dollars ($600,000.00) ("Losses Threshold")*, in which event the Sellers shall be liable to the Buyer Indemnified Parties *solely for all Losses in excess of such amount*."  *Id*. (emphases added.)  Section 9.2(a) concerns the Sellers breaches of any

15

representation or warranty contained in Article 4 of the MIPA, including Section 4.4 of the MIPA.[6]  As the maximum amount of the Tax Bills are less than the $600,000 Losses Threshold, per Section 9.4(a) of the MIPA, the Sellers have no payment obligation to the Plaintiffs, even assuming a breach of Section 4.4 if the MIPA.

### B.     The Tax Bills Are Also Not A Breach Of Sections 4.7 Or 4.8 Of The MIPA

Plaintiffs' also contend that the Sellers breached Sections 4.7 and 4.8 of the MIPA in regard to the Tax Bills.  This contention is contradicted by a plain reading of the terms of those provisions.   Neither Section 4.7 nor Section 4.8 pertains to tax obligations.   All specific representations with respect to Sellers' tax obligations are only contained in Section 4.4 of the MIPA.

Additionally, as noted above, Section 4.7 concerns "Litigation and Regulatory Matters" and disclosure of pending or threatened "Legal Proceeding." *See* Compl. Ex. A at 31-32.  "Legal Proceeding" is defined as "any judicial, administrative or arbitral actions, suits or proceedings (public or private) by or before a Governmental Body."  *Id*. at 13.  Plaintiffs cannot possibly demonstrate that these Tax Bills, which are not and never were the subject of a judicial or administrative action are "Legal Proceedings" that should or could have been disclosed.

Similarly, as discussed above, Section 4.8 concerns "Compliance With Laws; Permits" and represents that Major Energy "is in compliance in all material respects with all Laws applicable to it or its business, properties or assets."  *Id.* at 32.  Plaintiffs have not alleged facts showing that any laws were violated in relation to the Tax Bills and have provided no

---

[6] Although the MIPA provides an exception to the $600,000 Losses Threshold for losses resulting from the Sellers breach of a "Fundamental Representation" (*see* Section 9.4(c)), Section 4.4 is not included in the definition of a "Fundamental Representation."

documentation showing that New York, Massachusetts, or New Jersey are claiming that Major Energy violated laws with respect to the subject Tax Bills.

While Plaintiffs make the bold assertion that "following the sale of Major Energy, however, legal proceedings or matters were pursued against Major Energy entities in Illinois, Massachusetts, New Jersey, and New York, alleging wrongdoing and/or delinquent tax obligations of Defendants arising prior to the closing of the MIPA," such allegation is unfounded and heavily contradicted by Plaintiff's documents attached to the Complaint, and relied upon to make this allegation.  Those purported state legal proceedings had nothing to do with delinquent tax liabilities.  *Compare* Compl. at ¶ 23 *with* Compl. Exs. D and E.  *See De Figueroa*, 403 F. Supp. 3d at 149 (E.D.N.Y. 2019) (explaining that a court need not feel constrained to accept as truth conflicting pleadings that make no sense, or that are contradicted either by statements in the complaint itself or by documents upon which its pleadings rely).

In short, Plaintiffs have not met their pleading burden by alleging facts sufficient to state a viable claim against the Sellers for indemnification with respect to the Tax Bills.  Accordingly, this claim should likewise be dismissed.

## **CONCLUSION**

For the foregoing reasons, the Sellers respectfully request that the Court grant this motion to dismiss Plaintiffs' Complaint in its entirety.

Dated: January 29, 2020
New York, New York

*/s/* Israel Dahan
Israel Dahan
KING & SPALDING LLP
1185 Avenue of the Americas
New York, NY 10036
Telephone No.:  (212) 556-2114
idahan@kslaw.com

*Counsel for Defendants*